JACOB D. BUNDICK, ESQ.
Nevada Bar No. 9772
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
bundickj@gtlaw.com
*Attorneys for Plaintiff*
*Allstate Life Insurance Company*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALLSTATE LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MARTINEATA LAMANCHA CARLISLE,<br><br>Defendant. | Case No.: 2:13-1868-RCJ-GWF<br><br>**ORDER GRANTING PLAINTIFF ALLSTATE LIFE INSURANCE COMPANY'S MOTION FOR DEFAULT JUDGMENT** |

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, Plaintiff Allstate Life Insurance Company's ("**Allstate Life"**) filed a motion for entry of default judgment (the "**Motion**" or "**Mot.**") against Defendant Martineata LaMancha Carlisle ("**Carlisle"**). (Dkt. #17.) Carlisle failed to respond to, or answer, Allstate Life's complaint previously served upon her and therefore, the Clerk of the Court entered a default against her on December 19, 2013. (Dkt. #10.) This Court has given due consideration to Allstate Life's motion for default judgment, (Dkt. #17), as well as the papers, pleadings, and exhibits offered in support thereof. The Court being fully advised in the matter and there having been no appearance made by Carlisle, it is therefore,

**ORDERED, ADJUDGED and DECREED** that Judgment be entered in favor of plaintiff Allstate Life, and against defendant Carlisle, on all counts of plaintiff's complaint; and it
///

is further ordered and adjudged that said Judgment shall include the following specific findings of fact, conclusions of law and award of relief:

### The Parties

1. Plaintiff Allstate Life is a wholly-owned subsidiary of non-party Allstate Insurance Company ("**Allstate**"). Allstate Life is not a citizen of Nevada.

2. Defendant Carlisle is an individual. At the time of service, Allstate Life determined that Carlisle lived at 3040 W. Avenue M7, Lancaster, California 93536. (*See* Dkt. #6.)

3. Carlisle is a Nevada resident.

### Jurisdiction

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §1332 and 28 U.S.C. §1334. The parties are diverse because Allstate Life is not a citizen of Nevada, and Carlisle is a citizen of Nevada. In addition, the amount in controversy is greater than $75,000.00 because Allstate Life's claims against Carlisle total at least $488,506.53.

5. The court has general personal jurisdiction over Carlisle because she is a Nevada resident. Carlisle has had, and continues to have, substantial, as well as continuous and systematic contacts, with the State of Nevada. Since 2008, she has availed herself of the protections afforded by the laws of the U.S. Bankruptcy Court for the District Court of Nevada by filing eleven (11) bankruptcy petitions. The two most recent bankruptcy petitions were filed on November 15, 2012 (prior to Allstate Life filing its complaint) and on December 31, 2013 (after the clerk of court entered a default) which list her address as 260 Flamingo Rd., Las Vegas, Nevada 89121. (Dkt. #17-3 (bankruptcy petitions).) As Carlisle holds herself out as a current Nevada resident and has filed numerous actions with the U.S. Bankruptcy Court in this district, the assertion of general jurisdiction is reasonable.

///

*LV 420329616v1 150945.010100*

6. The Court also has personal jurisdiction to enter this judgment over Carlisle because she has minimum contacts with Nevada and the exercise of jurisdiction over her in this matter does not offend traditional notions of fair play and substantial justice.

**Background**

7. Krystal Carlisle, known as Mariah ("**Mariah**"), had cerebral palsy.

8. A settlement of litigation related to medical care she received as a child provided that she would receive from Kaiser Foundation Health Plan, Inc. ("**Kaiser Foundation**"), *inter alia*, certain payments for her health care needs and living expenses. Specifically;

   a. commencing on March 15, 1989, $2,000 per month, compounding annually at 3 percent, for her life, guaranteed for 15 years. (Dkt. #17-5 (Settlement Agreement and Release).)

   b. commencing on December 26, 2002, $6,500 per month for her life, guaranteed for 5 years, (Dkt. #17-5);

   c. Commencing on December 26, 2002, $2,938.90 per month, compounding annually at 3 percent, for her life, guaranteed for 5 years, (Dkt. #17-5).

9. As permitted by the settlement agreement, Kaiser Foundation contracted with an Allstate affiliate for annuities to cover these payments. (*See* Dkt. #17-5 & 17-6.) As a result, Allstate Life issued two single-premium annuity contracts, Contract Nos. 90701865 and 90701866, on February 20, 1989 to fund the payment obligations that Allstate assumed from Kaiser Foundation, which are listed in previous paragraph. (Dkt. #17-7.)

10. Consistent with the settlement agreement, Contracts Nos. 90701865 and 90701865 and related applicable materials provided that:

   a. payments of:

      i. $2,000 per month, plus a 3 percent compounded annual increase, were guaranteed for at least 15 years (starting March 15, 1989);

///

    ii. $6,500 per month were guaranteed for at least 5 years (starting December 26, 2002);

    iii. and $2,938.90 per month, plus a 3 percent compounded annual increase, were guaranteed for at least 5 years (starting December 26, 2002), (all together, the "Certain Payments"), (*see* Dkt. #17-7);

  b. in the event of Mariah's death the Certain Payments would be disbursed to the annuity beneficiary, (Dkt. #17-7);

  c. Martin and Judy Carlisle, Mariah's parents, were the original annuity beneficiaries for both contracts, though the beneficiary designation could be changed during Mariah's lifetime, (Dkt. #17-7); and

  d. the annuity contracts "**terminate[] on the later of the payment of the last Certain Payment or the death of [Mariah]**," (Dkt. #17-7 (emphasis added).)

11. In 1999, Carlisle adopted Mariah and, pursuant to an April 19, 1999 court order, became her guardian ad litem.

12. As Mariah's guardian, Carlisle was responsible for administering monthly payments received from the two annuity contracts issued by Allstate Life. She also had control over a bank account holding funds for the benefit of Mariah.

13. Pursuant to the April 19, 1999 court order Allstate Life substituted Carlisle's name as the guardian ad litem in place of Mariah's parents on the annuity contracts and on the monthly annuity payments.

14. Allstate Life sent Carlisle copies of Contract Nos. 90701865 and 90701866.

15. At Carlisle's request, she was substituted as the beneficiary under Contract Nos. 90701865 and 90701866 in place of Mariah's parents.

16. On November 29, 2001, Carlisle petitioned the court for the release of additional funds from a blocked trust to be used for the care of Mariah. Information provided in support of the petition stated that Mariah underwent spinal surgery on August 22, 2001

and that Mariah was "completely paralyzed from slightly below her breast, down" but that she had "limited use of her right hand." Carlisle requested a one-time release of $52,000 and an increase in monthly maintenance to $7,172.40.

17. On November 13, 2002, one month before Mariah's 18th birthday, Allstate Life received an Information Update Form and a California All-Purpose Acknowledgment. (*See* Dkt #17-8.) The Acknowledgment contains a notary's confirmation that the Information Update Form was signed by Mariah.

18. On March 28, 2007, Allstate Life received a faxed letter that purported to be from and signed by Mariah. (*See* Dkt. #17-9.) The letter requested that all future correspondence be sent to Mariah's new address at 3040 West Avenue M7, Lancaster, California 93536.

19. Carlisle had regular communications with Allstate Life until 2007.

20. Allstate Life made the last Certain Payment on or about November, 2007. Thereafter, monthly payments were conditional on Mariah's being alive.

**After Mariah's Death Carlisle Forged Checks and Wrongfully Obtained Annuity Payments from Allstate Life**

21. Mariah passed away on March 28, 2008. (*See* Dkt. #17-4 (death certificate).)

22. Carlisle has not communicated with Allstate Life, by telephone, letter or in any other manner regarding the annuity payments, since Mariah died.

23. Allstate Life's obligations to make annuity payments terminated when Mariah passed away on March 28, 2008.

24. But Allstate Life was not provided with timely notice of Mariah's death. As a result, Allstate Life continued making annuity payments every month, operating under the false belief that Mariah was still alive.

25. In the latter part of March of 2012, Allstate Life learned, for the first time, that Mariah had died on March 28, 2008. Allstate immediately stopped making payments under Contract Nos. 90701865 and 90701866.

26. Between the time Mariah died and the time Allstate ceased making payments, Allstate:

    a. Made overpayments totaling $176,506.53 under Contract No. 90701865.[1] All of these payments, were made in the form of checks made payable to Mariah, and all of these checks were endorsed with a signature that purports to be that of Mariah.

    b. Made overpayments totaling $312,000 under Contract No. 90701866.[2] Of these overpayments three payments, totaling $19,500, were made by directly depositing funds into a bank account established for Mariah and the remainder were made by checks made payable to Mariah. These checks were endorsed with a signature that purports to be that of Mariah.

27. All of the checks written to Mariah were actually endorsed by Carlisle, who forged the signature of her deceased niece on the back of each check. (*See* Dkt. #17-10.)

28. Carlisle knew when she negotiated each of these checks that she was committing forgery and obtaining access to funds to which she was not entitled.

29. Carlisle also knew the $19,500 in funds that Allstate Life direct deposited into Mariah's bank account under Contract No. 90701866 were funds to which she was not entitled.

30. However, instead of notifying Allstate Life that Mariah had died, Carlisle continued to accept payments from Allstate Life, forging checks by endorsing them with Mariah's name and accepting deposits made into a bank account that had been set up for Mariah's exclusive benefit.

31. Carlisle fraudulently procured and wrongfully retained at total of $488,506.53 from Allstate Life.

///

---

[1] Specifically, Allstate Life made 11 payments of $3,507.01, 12 payments of $3,612.22, 12 payments of $3,720.59, 12 payments of $3,832.21, and one payment of $3,949.18.
[2] Specifically, Allstate Life made 48 payments of $6,500.

**Allstate Life Demanded the Return of Funds From Carlisle**

32. It took Allstate Life four years to learn about Mariah's death, discontinue annuity payments, and demand from Carlisle the return of the fraudulently procured funds.

33. In March 2012, after learning that Mariah had been dead for four years, Allstate Life attempted to call Carlisle to discuss the annuity contract overpayments and left voicemail messages asking Carlisle to call Allstate Life. Carlisle never returned these telephone calls. On March 28, 2012, Allstate sent a letter to Carlisle demanding the return of the overpayments. (*See* Dkt. #17-11.)

34. Carlisle failed, prior to the initiation of litigation, to respond in any way to Allstate Life's telephone calls or correspondence demanding the return of its money.

35. Carlisle has not returned any of the $488,506.53 in funds she obtained fraudulently and over which she has improperly exercised control.

**Procedural History**

36. On October 11, 2013, Allstate Life filed a complaint alleging the following claims for relief against Carlisle: (a) fraud; (b) conversion; (c) equitable accounting; and (d) constructive trust/restitution – based on violations of NRS 205.090 contract forgery. (Dkt. #1.)

37. On October 24, 2013, Allstate Life's process server served Carlisle by leaving the summons and complaint with a person of suitable age and discretion, Cynthia Woods, then residing at 3040 W. Avenue M7, Lancaster, California, 93536. (*See* Dkt. #6.)

38. Carlisle did not file or serve an answer or responsive pleading to the complaint in accordance with FRCP 12.

39. On November 22, 2013, Carlisle's "representative" Amy Konstantelos, by way of email advised Allstate Life's counsel "I am not sure [Carlisle] will bother contesting this or it will go by way of default. . ." in response to counsel's inquiry if Carlisle intended to file an answer to the complaint after the extended deadline provided. (*See* Dkt. #17-9 (affidavit of counsel).)

40. Pursuant to Allstate Life's request, on December 19, 2013, the clerk of the court entered a default against Carlisle. (Dkt. #10.)

41. Allstate Life moved for default judgment on June 19, 2014 and submitted substantial evidence in support thereof.

42. The court held a hearing on the application for default judgment on September 25, 2014 after which it granted the motion for default judgment against Carlisle.

**Default Judgment Is Properly Granted Against Carlisle on All Claims**

43. The Court finds that Allstate Life is entitled to default judgment on each of its claims against Carlisle.

**(a) Default Judgment Is Properly Granted Against Carlisle on the Fraud Claim**

44. To succeed on its fraud claim, Allstate Life must establish that: (1) Carlisle made a false misrepresentation she knew or believed was false, or she had an insufficient basis of information for making the representation; (2) Carlisle intended to induce Allstate Life to act or refrain from acting upon the misrepresentation; (3) Allstate Life justifiably relied upon Carlisle's representations; and (4) Allstate Life sustained damages as a result.

45. Allstate Life has made a prima facie case on each of these elements.

46. Contracts 90701865 and 90701866 set forth that "[t]his contract terminates on the later of the payment of the last Certain Payment or the death of [Mariah]." (*See* Dkt. #17-7.) Mariah died on March 28, 2008. (Dkt. #17-4.) Carlisle never notified Allstate Life of Mariah's death despite the fact that Carlisle was Mariah's court appointed guardian who understood that the annuity payments were being paid to Mariah during her lifetime in connection with a personal injury lawsuit settlement, and who had regular communications with Allstate Life until Mariah's death.

47. Instead, Carlisle ceased all communications with Allstate Life and forged Mariah's name on checks to obtain access to funds she was not entitled, and to ensure and perpetuate the misrepresentation that Mariah was alive and entitled to receive future annuity payments from Allstate Life.

48. Carlisle knew that her ongoing actions of forging checks and then depositing those checks into a designated bank account disclosed to Allstate Life prevented Allstate Life from learning of Mariah's death. She also knew that Allstate Life would continue to issue annuity payments in accordance with its contractual obligations until it received notice of Mariah's death, which she concealed by failing to give notice and forging Mariah's name.

49. Allstate Life did, in fact, believe that Mariah was alive as a result of Carlisle's actions and issued annuity payments of $488,506.53 in excess of its contractual obligations. Had Carlisle disclosed Mariah's death on March 28, 2008, Allstate Life would have immediately ceased all annuity payments.

50. Allstate Life is entitled to a judgment against Carlisle for the full amount of $488,506.53.

**(b) Default Judgment Is Properly Granted Against Carlisle on the Conversion Claim**

51. To succeed on claim for conversion, Allstate Life must establish that: (1) Carlisle committed a distinct act of dominion wrongfully exerted over Allstate Life's personal property; (2) the act was in denial of, or inconsistent with, Allstate Life's title or rights therein; or (3) the act was in derogation, exclusion, or defiance of Allstate Life's title or rights in the personal property.

52. Allstate Life has made a prima facie case on each of these elements.

53. Carlisle wrongfully exercised dominion and control over $488,506.53 in annuity funds belonging to Allstate Life. Her failure to notify Allstate Life of Mariah's death was intentional. Carlisle knew of the contractual requirement to notify Allstate Life of Mariah's death. She continued the fraud when she then forged Mariah's signature to checks issued by Allstate Life for the sole purpose of converting funds which she was not entitled.

///

*LV 420329616v1 150945.010100*

54. Allstate had no duty to provide annuity payments to Mariah or anyone else after Mariah died on March 28, 2008. Carlisle's actions are inconsistent with, and denied, Allstate Life's title in funds it did not owe.

55. Allstate Life is entitled to a judgment against Carlisle for the full amount of $488,506.53.

### (c) Allstate Life is Entitled to an Accounting of the Funds

56. Allstate Life is entitled to a default judgment for $488,506.53.

57. Carlisle's fraud entitles Allstate Life to detailed information and supporting documentation regarding what she has done with each and every one of the annuity payments received after Mariah's death. This accounting is necessary proper, along with the legal remedies sought in the complaint, to assist in making Allstate Life whole.

58. Carlisle shall to provide a full and complete accounting of where the $488,506.53 in annuity payments are located.

### (d) Allstate Life is Entitled to a Constructive Trust/Restitution Based on Violations of Nevada Revised Statute 205.090

59. NRS §205.090 provides for restitution, in addition to other remedies, where a person is guilty of forgery:

> A person who falsely makes, alters, forges or counterfeits any record, or other authentic matter of a public nature, . . .bank bill or note, post note, check, . . . or counterfeits or forges the seal or handwriting of another, with the intent to damage or defraud any person, body politic or corporate, whether the person, body politic or corporate, resides in or belongs to this State or not, or utters, publishes, passes or attempts to pass, as true and genuine, any of the above-named false, altered, forged or counterfeited matters, as above specified and described, knowing it to be false, altered, forged or counterfeited with the intent to prejudice, damage or defraud any person, body politic or corporate, whether the person, body politic or corporate, resides in this State or not, is guilty of forgery. . . .   In addition to any other penalty, the court shall order the person to pay restitution.

60. After Mariah's death Allstate Life made 45 payments of $6,500 by checks made payable to Mariah. Carlisle accepted these checks and intentionally forged Mariah's signature on the checks, without authorization from Allstate Life and with the specific intent to defraud Allstate Life. (*See* Dkt. #17-10.)

61. Allstate Life is entitled to restitution pursuant to NRS §205.090 as a result of the check forgeries committed by Carlisle.

62. Further, Carlisle's retention of legal title to any funds paid by Allstate Life which were meant for Mariah is inequitable considering Carlisle's intentional acts of forging signatures on Allstate Life's checks to Mariah, in direct violation of NRS §205.090.

63. A constructive trust is also necessary here to prevent unjust enrichment and effectuate justice against Carlisle's intentional wrongdoing which have injured Allstate Life.

**Conclusion**

For all the above-stated reasons, Allstate Life's motion for default judgment against defendant Carlisle is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Carlisle shall pay Allstate Life the sum of $488,506.53 in restitution of the funds that she obtained from Allstate Life by fraud, conversion and violations of NRS §205.090.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Carlisle shall provide Allstate Life with a full and complete accounting of where the $488,506.53 in annuity overpayments payments received from Allstate Life are located.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that a constructive trust in favor of Allstate Life is hereby imposed on any portion of the $488,506.53 in annuity overpayments in the defendant Carlisle's possession, custody or control.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Carlisle shall pay Allstate Life the costs it incurred in the prosecution of this matter as outlined in the Bill of Costs filed simultaneously with this order.

///

///

///

///

*LV 420329616v1 150945.010100*

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that jurisdiction is reserved to award plaintiff Allstate Life further costs incurred in the prosecution and defense of this matter after Default Judgment has been entered.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

DATED: October 21, 2014

Respectfully submitted by:

GREENBERG TRAURIG, LLP

By:   */s/ Jacob D. Bundick*
JACOB D. BUNDICK, ESQ., NV Bar No. 9772
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
*Attorneys for Plaintiff Allstate Life Insurance Company*

*LV 420329616v1 150945.010100*